LOWENSTEIN et al. v. HARGRAVES MILLS.

(Supreme Court, Appellate Division, First Department. December 2, 1910.)

1. SALES (§ 418*)—CONTRACT OF SALE—BREACH—MEASURE OF DAMAGES.

Where a seller contracts for the sale and delivery of goods, with knowledge that the goods are purchased with a view to resale, the measure of damages for a breach of its contract is the difference between the market price at the time and place of delivery, and the price at which the seller agreed to sell and deliver the goods, provided the goods were obtainable in the market, and if not, then the difference between the contract price and the price at which the buyer had made a resale, less the expense to the buyer of carrying out the contract.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1174–1201; Dec. Dig. § 418.*]

2. SALES (§ 420*)—CONTRACT OF SALE—MEASURE OF DAMAGES—QUESTION FOR JURY.

The defendant contracted to sell to plaintiff a quantity of unbleached cotton, knowing that the purchaser was buying it for the purpose of resale. After delivery of part of the amount sold the defendant canceled the contract. *Held*, in an action for damages for breach of contract, that whether such goods could have been obtained in the open market, and whether the plaintiff's contract of resale could be performed only by the delivery of goods of the defendant's manufacture, were questions for the jury.

[Ed. Note.—For other cases, see Sales, Dec. Dig. § 420.*]

Appeal from Trial Term, New York County.

Action by Morris Lowenstein and others against the Hargraves Mills. From a judgment upon a verdict for the plaintiffs, and an order denying a new trial, the defendant appeals. Judgment and order reversed, and new trial granted.

Argued before INGRAHAM, P. J., and McLAUGHLIN, MILLER, LAUGHLIN, and DOWLING, JJ.

Samuel J. Rosensohn, for appellant.

Max D. Steuer, for respondents.

LAUGHLIN, J. The defendant is a corporation, and it manufactured and sold unbleached cotton goods. The plaintiffs are copartners, and they were engaged in buying unbleached cotton goods and in bleaching, which is known as "converting," and selling the same. The defendant was aware of the fact that the plaintiffs purchased goods with a view to reselling them. This action is brought for a breach of a contract negotiated for the parties by brokers on the 30th day of October, 1906, by which the defendant sold and agreed to deliver to the plaintiffs 100,000 yards of goods at the price of 7⅛ cents per yard. The plaintiffs proved that the defendant delivered to them or on their order 30,081 yards of goods pursuant to the contract and thereafter and on the 6th day of April, 1907, gave notice to the brokers who negotiated the contract that it elected to cancel the contract on account of the failure of the plaintiffs to comply with its terms, and that two days later the plaintiffs received a communication from the brokers transmitting this notice. Pending the performance of the contract the market price of cotton goods ad-

vanced materially. The alleged breach of contract, assigned by the defendant as justification for canceling it, was the failure of the plaintiffs to pay for certain invoices of the goods within the time specified in the contract. The goods delivered were all paid for, but some payments were not made within the time payment was required by the contract. Counsel for the defendant conceded that his client waived the objection that the goods were not paid for in accordance with the contract, as to all payments except for the last invoice; and with respect to that the undisputed evidence shows that the plaintiffs duly and timely remitted and that the remittance was received and accepted by the defendant.

The only serious question presented by the appeal relates to the measure of damages. The plaintiffs gave evidence tending to show that they had placed orders for a resale of all of the goods for 10½ cents per yard and that the bleaching would have cost them only 1 cent per yard. On this theory they sustained a loss of profits of 2⅜ cents per yard on the goods which the defendant failed to deliver. The recovery is for nearly that amount with interest, and evidently was intended to be for that amount but for an error in the complaint by which the demand for judgment was limited to a smaller sum. It is now conceded that the proper rule of damages in such case is the difference between the market price at the time and place of delivery and the price at which the defendant agreed to sell and deliver the goods, provided the goods were obtainable in the market, and, if not, then the difference between the contract price and the price at which the vendee placed orders for a resale less the expense to him of carrying out the contract. See Delafield v. J. K. Armsby Co., 131 App. Div. 572, 116 N. Y. Supp. 71, affirmed 199 N. Y. ——, 92 N. E. 1083; McManus v. American Woolen Co., 126 App. Div. 68, 110 N. Y. Supp. 680. The court instructed the jury that the general rule of damages in an action for a breach of contract is the difference between the contract price and the market price of the goods at the time and place of delivery, but that there were exceptions to it, and that if the vendor is aware of the fact that the vendee is purchasing for the purpose of resale "then the measure of damages to be applied to the breach of such a contract is the profit contemplated between the parties at the time of the making of the contract, and that is the measure of damages to apply to a breach under such a condition." No exception was taken to this instruction. Counsel for the defendant, however, requested the court to charge that, if there was a "regular market price for the purchase of goods of the kind agreed to be sold to the plaintiffs by the defendant," then the measure of damages would be the difference between the market price and the contract price. This request was declined, and an exception was duly taken. The court was then requested in behalf of the defendant to instruct the jury that in the event the facts were as stated in the request lastly quoted, the contracts made by the plaintiffs for the resale of the goods were immaterial and should be disregarded. This was likewise refused and an exception was duly taken. It is unnecessary to consider whether these requests were

inaccurate in that they specifically relate to a *market price* instead of a market, for it is apparent that the requests were not declined on that theory as is shown by subsequent rulings. Counsel for the defendant thereupon requested the court to charge that if the plaintiffs could have bought the goods in the open market for 7½ cents per yard it was their duty to do so in order to lessen the damages, and that in that event they could not recover more than ⅜ of a cent per yard, that being the difference between the purchase price and what it would have cost them to have filled the order in the market. This request was declined and exception was duly taken. On the attention of the court being drawn to the fact that there was no evidence that the plaintiffs went into the market and attempted to purchase the goods, the court stated in effect that it was immaterial, for the jury had been instructed "that the measure of damages is the difference between the price he bought from you and the price of the contract which he sold," and stated that this case was an exception to the general rule. It thus appears quite plainly that the learned trial court did not leave it to the jury to determine as a question of fact whether or not these goods could have been obtained in the open market. We are of opinion that the evidence made that question one of fact for the jury. One of the plaintiffs testified that goods of the defendant's manufacture were being sold in the market at about and after the time of the breach of the contract by the defendant, and one of the brokers who negotiated the contract testified that had he been requested so to do at the time of the breach he could have purchased more than the quantity of the goods undelivered under the contract at 7⅜ cents per yard. It is claimed that this testimony on the part of one of the plaintiffs and by the broker does not relate to goods of the defendant's manufacture, but to similar goods manufactured by other mills, and that the plaintiffs' contracts with their customers could only be performed by the delivery of goods of the defendant's manufacture. There was conflicting evidence on both of these questions and they therefore became questions of fact to be submitted to the jury. The evidence, with respect to the contracts made by the plaintiffs for a resale of the goods, is principally the testimony of one of the plaintiffs which is not conclusive, nor is it as clear and definite as it would seem could have been presented.

It follows, therefore, that the judgment and order should be reversed and a new trial granted, with costs to appellant to abide the event. All concur.